## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| AMY CHAFFEE, <br><br>            Plaintiff, <br><br> v. <br><br> EQUIFAX INFORMATION SERVICES, LLC, <br><br>            Defendant. | Case No.: 0:21-cv-02063 <br><br><br> **COMPLAINT AND** <br> **DEMAND FOR JURY TRIAL** <br><br><br>    1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Amy Chaffee, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax").

## I.     INTRODUCTION

1.     Plaintiff's Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant.  Plaintiff contends Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer reports, and consequently reported inaccurate information about Plaintiff.  "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.   JURISDICTION AND VENUE

2.   This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiff alleges violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

3.   Venue in the District of Minnesota is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

4.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

5.   Plaintiff is a natural person who resides in Harris, Minnesota.

6.   Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

7.   Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served through its agent for service of process, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

2

8. During all times pertinent to this Complaint, Defendant were authorized to conduct business in the State of Minnesota and conducted business in the State of Minnesota on a routine and systematic basis.

9. Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 USC § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and is therefore a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

10. During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

## IV.   FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence, which is essential to the continual functioning of the banking system.

3

14.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15.     The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs" and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiff and other consumers through the sale of consumer reports.

17.     Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

18.     Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

4

19.     Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third party providers, vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

20.     Defendant regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports Defendant sells to third parties such as lenders.

21.     The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy filings and their effect on consumers' debts.

22.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

23.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

24.     The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Score(s).

25.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

26.     FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

      a.   "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

      b.   The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

27.     Lenders also consider a consumer's debt-to-income ratio (DTI) based on the total amount of debt reported by CRAs in consumer reports. DTI compares the total amount a consumer owes to the total amount a consumer earns.

28.     A consumer's income, however, is not included in their consumer report; only their amount of debt is.

29.     Lenders consider a consumer's DTI when deciding whether to approve financing and the credit terms thereof.

30.     The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit, and the credit terms will be worse (e.g., higher interest, lower credit limits).

31.     Upon information and belief, a consumer who has obtained a bankruptcy discharge and has a consumer report that is inaccurately reporting outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

32.     Additionally, accounts that are reported with a "charge off" status can severely impact a consumer's credit score and creditworthiness.

33.     Defendant is well aware that the effect of payment plan in a Chapter 13 Bankruptcy is to stop the collection efforts of the creditors of unsecured debts that are listed in Plaintiff's bankruptcy petition.

34.     Defendant is further aware that the repayment plan in a Chapter 13 bankruptcy governs the payment terms between a consumer and his or her creditors, and that a consumer is not obligated to pay his or her creditors directly following the filing of a Chapter 13 bankruptcy.

35.     Defendant is notified of consumer bankruptcy filings by furnishers of information, and from the information Defendant independently gathers from third parties.

36.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiff, who have filed a Chapter 13 Bankruptcy plan.

37.     Defendant's unreasonable policies and procedures cause it to regularly report consumer information without verifying its accuracy.

38.     Defendant's unreasonable policies, procedures and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

39.     Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating the information as required by § 1681e(b), despite possessing information that is inconsistent with the reported information and/or that establishes the reported information is inaccurate.

40.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

41.     Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, and/or sourced through Defendant's independent and voluntary efforts.

42.     Further, Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in Defendant's own files.

8

43.     Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate consumer reporting following the filing of a Chapter 13 payment plan.

44.     Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

45.     Plaintiff filed a Chapter 13 Bankruptcy on or about October 20, 2017, in the United States Bankruptcy Court for the District of Minnesota (Case No. 17-33309).

46.     Thereafter, all collection activity on her debts included in her bankruptcy plan halted, and these debts do not become delinquent after the bankruptcy filing.

47.     Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff after Plaintiff filed for Chapter 13 Bankruptcy.

48.     In Plaintiff's consumer reports, Defendant included the bankruptcy case number, court, filing date and the fact that Plaintiff had filed for Chapter 13 bankruptcy.

49.     Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

50.     Defendant reported Plaintiff's bankruptcy filing and Chapter 13 wage earner plan filing information (date/court/chapter) in the Public Records section and individual tradelines of Plaintiff's consumer reports.

51.    Defendant obtained notice of Plaintiff's bankruptcy filing through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

52.    Defendant is aware that CRAs are generally prohibited from labeling an account that has been included in a bankruptcy petition as charged off if the account was open and not charged off when the consumer filed bankruptcy, and that such a designation would be inaccurate or misleading, as it would indicate that the creditor had charged off the account at the time of bankruptcy when it had not in fact done so.

53.    However, rather than accurately report Plaintiff's debts, Defendant inaccurately reported Plaintiff's WF/Nationwide Account (the "Account"), starting with 5774 and opened in April 2016, which predated Plaintiff's bankruptcy filing.

54.    The Account was open and current in August, September, and October 2017, and Plaintiff filed for Chapter 13 bankruptcy in October 2017. Therefore, in the subsequent months, the Account status should have remained the same.

55.    However, Equifax inaccurately reported the Account with status codes "L" in the months of August 2017 through December 2018. The status code "L" means that the Account was charged off in those months.

56.    According to Equifax, a charge-off means the lender has written the account off as a loss and the account is closed to future charges, the time frame is generally between 120 and 180 days after you become delinquent, and a charge-off does not mean that you no longer owe the debt, you are still legally obligated to pay the debt.

57.     Charge-off status accounts therefore reflect that a consumer has become extremely delinquent on an Account, and furthermore, still owes the associated balance.

58.     Equifax failed to accurately report Plaintiff's current payment history or accurately report the Account's payment history by omitting payment history following Plaintiff's bankruptcy filing, despite reporting Plaintiff's bankruptcy in the public records section of Plaintiff's consumer report and reporting other pre-bankruptcy accounts as included in the Chapter 13 payment plan with no payment history following Plaintiff's bankruptcy filing.

59.     Notably, the other national CRAs, Experian and Trans Union, did not inaccurately report the Account like Equifax. Experian and Trans Union accurately reported the Account as current in the months of August and September 2017, with no reported payment history in October 2017 and no payment history following the filing of Plaintiff's bankruptcy. Experian and Trans Union also did not report the Account as charged off in any month.

60.     Upon information and belief, WF/Nationwide furnished information to Defendant that indicated Plaintiff's debt was not charged off but was instead included in bankruptcy. Alternatively, WF/Nationwide did not furnish any payment history information to Equifax following Plaintiff's bankruptcy filing. However, Defendant rejected, overrode, or inaccurately supplemented the data it received.

61.     Alternatively, upon information and belief, Defendant knew from past experiences that WF/Nationwide furnished inaccurate information regarding debts

included in bankruptcy or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 13 Bankruptcy is filed.

62.     Nevertheless, Defendant blindly relied on the information provided by WF/Nationwide even though this information conflicted with or was contradicted by information contained in Defendant's records, as well as Defendant's knowledge regarding Plaintiff's bankruptcy filing.

63.     Thus, any reliance by Defendant on the furnisher, WF/Nationwide, was unreasonable.

*Plaintiff's Disputes*

64.     In or around April 2021, Plaintiff discovered the inaccuracies regarding the Account in an Equifax consumer disclosure that she acquired to check her credit information.

65.     On or about May 14, 2021, Plaintiff mailed a letter to Equifax, disputing Defendant's reporting of the Account.

66.     The letter specifically stated that the Account was included in Plaintiff's Chapter 13 bankruptcy filing and that Plaintiff did not know why Equifax continued to update the payment history on the Account following the filing of her bankruptcy.

67.     Equifax received Plaintiff's dispute letter. Accordingly, Equifax was put on notice that Plaintiff disputed Equifax's reporting of a charge off status in the months following Plaintiff's bankruptcy filing.

68.     On or about May 31, 2021, Equifax delivered correspondence to Plaintiff indicating that Equifax had resolved Plaintiff's dispute.

69.     Equifax stated that it had researched the Account and that the Account was already reporting as included in bankruptcy. Equifax, however, continued to inaccurately report the Account with status code "L" in the months from August 2017 to December 2018, inaccurately indicating that the Account was charged off in those months. There was no indication that Equifax had conferred with the furnisher of the Account; the only change to Equifax's reporting of the Account was the addition of a dispute notation to the "Additional Information" section of the Account.

70.     Upon information and belief, Equifax did not forward Plaintiff's dispute to WF/Nationwide, the furnisher of the Account information, but merely checked if Equifax was already reporting the Account as included in bankruptcy. Equifax did not investigate whether the reported charge off statuses were accurate. Accordingly, Equifax failed to reasonable investigate the items of information that Plaintiff disputed.

71.     Consequently, Defendant inaccurately reported that Plaintiff's Account was charged off by the creditor despite knowledge that the account was included in Plaintiff's Chapter 13 bankruptcy.

72.     Defendant also inaccurately reported that the Account was delinquent prior to Plaintiff's Chapter 13 Bankruptcy.

73.     Defendant's reporting of the Account is patently false and therefore inaccurate.

74.     If not patently false, Defendant's reporting of the Account is materially misleading and therefore inaccurate.

*Plaintiff's Damages*

75.     Upon information and belief, had Defendant accurately reported the Account without the charge off statuses before and after Plaintiff's bankruptcy filing, Plaintiff's credit scores would have been better.

76.     Upon information and belief, Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to The Bank of Missouri, CBNA, Suntrust Bank, and Hiway Federal Credit Union by Defendant during the process of Plaintiff's credit applications.

77.     As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

78.     Additionally, Plaintiff suffers interference with daily activities as well as emotional distress including, without limitation, emotional and mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, loss of sleep, and anxiety.

## V.     COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681e(b), 1681i

79.     Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

80.     The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

81.     Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of credit information pertaining to pre-bankruptcy debts after the consumer files for Chapter 13 bankruptcy.

82.     In this case, Defendant inaccurately reported debts related to accounts that Defendant knew predated Plaintiff's Chapter 13 Bankruptcy, were open and current before Plaintiff's bankruptcy filing, and should therefore have accurately reported with current payment history or with no payment history after Plaintiff's bankruptcy filing.

83.     Defendant independently sought information about Plaintiff's bankruptcy filing and voluntarily reported this information in Plaintiff's consumer reports.

84.     The diligence Defendant exercises in recording consumer bankruptcy filings is not replicated in its reporting of the effect of bankruptcy proceedings.

85.     Consequently, Defendant routinely reports inaccurate, incomplete, outdated, and materially misleading information about Plaintiff, without verifying the accuracy of this information, or updating this information as required by § 1681(e)(b) when Defendant possesses information inconsistent with the reported information, and possesses information establishing that the reported information is in fact inaccurate.

86.     When Defendant voluntarily procured and published Plaintiff's bankruptcy information, it had an obligation to ensure it followed reasonable procedures to report the bankruptcy filing and its effect(s) with maximal accuracy.

87.     Despite knowledge of these legal obligations, Defendant willfully and consciously breached its known duties and deprived Plaintiff of Plaintiff's rights under

the FCRA. Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting debts as not charged off unless the creditor has in fact charged off the debt.

88.     These obligations are well established by the plain language of the FCRA, promulgations by the Federal Trade Commission, detailed case law and evidenced in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of debts.

89.     Defendant knew or should have known that the effect of a bankruptcy plan filing in a Chapter 13 Bankruptcy is to stay all collection activity on unsecured debts, and furthermore, that the bankruptcy plan supersedes a consumer's previous payment obligations to his or her creditors.

90.     Defendant knows that debts should not be reported as charged off before a bankruptcy filing unless the creditor has in fact charged off the Account, and that after a bankruptcy filing, it is inaccurate to report that an Account has been charged off when it was open and current at the time of the filing.

91.     Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those that apply when consumers file for Chapter 13 Bankruptcy.

92.     Yet in this case, Defendant reported the Account, which predated Plaintiff's bankruptcy, as charged off when it was in fact current, and with a payment history of charge off statuses when the Account was included in Plaintiff's bankruptcy plan.

93.     Defendant had actual knowledge of Plaintiff's bankruptcy and Chapter 13 plan, as evidenced by the information it published in Plaintiff's consumer reports, including the bankruptcy case number, court, the date of filing, and that the Account was included in Plaintiff's wage earner plan.

94.     Defendant is also on notice from other tradelines reported by Defendant that indicate Plaintiff's accounts were included in bankruptcy and are reported without payment history following Plaintiff's bankruptcy filing.

95.     Defendant received notice of Plaintiff's bankruptcy filing through public records, their own files, information provided by data furnishers, and Plaintiff's dispute.

96.     Defendant had prior notice of their unreasonable procedures for reporting debts included in Chapter 13 bankruptcy.

97.     Defendant also possessed information from which Defendant should have known the information reported about Plaintiff was inaccurate, as Plaintiff's consumer reports include: the date the consumer filed bankruptcy, whether the consumer's bankruptcy has been dismissed, as well as the date the inaccurate tradeline account/debt arose or was otherwise opened by the consumer.

98.     Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

99.     Defendant also violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report, and also by failing to report accurate information when

placed on notice that the information Defendant is reporting is inaccurate, and/or otherwise contradicted by information known by Defendant or reasonably available to Defendant.

100.   Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

101.   Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

102.   Defendant's conduct also constitutes a violation 15 U.S.C. § 1681i.

103.   Even after Plaintiff notified Defendant of the inaccurate information it included in Plaintiff's credit file, Defendant continued to inaccurately report the Account as "charged off."

104.   When a consumer disputes the accuracy or completeness of information included in a CRA's credit file, the FCRA requires the agency to either conduct a reasonable reinvestigation into the disputed information **or** delete the disputed information from the consumer's credit file within thirty (30) days of receiving notice of the dispute. 15 U.S.C. § 1681i(a)(2)(A).

105.   When conducting its reinvestigation of disputed information in a consumer report, the consumer reporting agency is required to "review and consider all relevant information submitted by the consumer."

106.   Additionally, the CRA must notify the person who furnished the disputed information of the consumer's dispute within five business days of its receipt. When notifying the furnisher of the consumer's dispute, the CRA is to "include all relevant

information regarding the dispute that the agency received from the consumer." 15 U.S.C. § 1681i(a)(2)(A).

107.    Thus, in addition to violating the FCRA by failing to follow reasonable procedures as 15 U.S.C. § 1681e(b) requires, Defendant violated the FCRA by failing to perform a reasonable reinvestigation of the disputed Account even after Plaintiff notified Defendant of the inaccurate information reported in Plaintiff's credit file.

108.    Defendant Equifax's violations of 15 U.S.C. § 1681i include, but are not limited to the following:

(a)    Failing to reasonably reinvestigate the inaccurate information Plaintiff disputed.

(b)    Failing to consider all relevant information while investigating Plaintiff's dispute.

(c)    Failing to include all relevant information when (if at all) notifying WF/Nationwide of Plaintiff's dispute.

(d)    Failing to notify WF/Nationwide of Plaintiff's dispute.

109.    Instead of reasonably reinvestigating Plaintiff's dispute, Defendant Equifax continued to report the Account as charged off after Plaintiff's bankruptcy filing. Upon information and belief, Equifax did nothing in response to Plaintiff's dispute other than confirm that Equifax was already reporting the Account as included in bankruptcy, in willful and reckless disregard of Equifax's obligations under 15 U.S.C. § 1681i.

110.    Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

111.    Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, and other financial harm caused by Defendant inaccurately reporting a debt that was current up to the date that Plaintiff filed for bankruptcy as charged off, and failing to take corrective measures to correct the inaccuracies after receiving Plaintiff's dispute.

112.    Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, sleepless nights, and anxiety.

113.    Defendant is a direct and proximate cause of Plaintiff's damages.

114.    Defendant is a substantial factor in Plaintiff's damages.

115.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a)    An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(b)    An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(c)     An award of punitive damages, as allowed by the Court pursuant to 15

U.S.C. § 1681n(a)(2),

(d)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3)

and § 1681o(a)(2); and

(e)     Such other and further relief as this Honorable Court may deem just and

proper, including any applicable pre-judgment and post-judgment interest,

and/or declaratory relief.

## VII.   <u>JURY DEMAND</u>

Plaintiff hereby demands jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 17th day of September 2021,

<div style="margin-left: 50%;">

*/s/Jenna Dakroub*
Jenna Dakroub, MN # 0401650
**PRICE LAW GROUP, APC**
8245 N. 85th Way
Scottsdale, AZ 85259
Telephone: (818) 600-5513
Fax: (818) 600-5413
Email: jenna@pricelawgroup.com
*Attorney for Plaintiff Amy Chaffee*

</div>